# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL ENRIQUEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO. EDCV 17-1651 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.
## INTRODUCTION

Gabriel Enriquez ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his applications for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI"). The parties consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the decision of

the Commissioner is REVERSED, and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert ("VE") or by

3

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**III.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 27). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 18, 1995, the alleged onset date.[1] (AR 20). At step two, the ALJ found that Plaintiff's attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, and learning disorder are severe impairments.[2] (AR 20). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments

---

[1] At the administrative hearing, Plaintiff amended his onset date to June 19, 2011. (AR 36).

[2] The ALJ found that Plaintiff's medically determinable impairments of pleurisy, right ingrown toenail, erectile dysfunction, sore throat, back pain, headaches, stomach pains, rash, and a lump on leg cause only slight abnormalities that would have no more than a minimal effect on his ability to work and are therefore nonsevere. (AR 21).

4

that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 21-22).

The ALJ then assessed Plaintiff's RFC and concluded he can perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine tasks, occasional interaction with supervisors and coworkers, incidental (less than occasional) public contact, and can maintain attention and concentration for two-hour increments with normal breaks. [Plaintiff] is precluded from fast-paced work, such as work at a fast food restaurant during mealtimes or an assembly line, and concentrated exposure to respiratory irritants.

(AR 22). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 26). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager, kitchen helper, and laborer. (AR 26-27). Accordingly, the ALJ found that based on the CIB application, Plaintiff was not disabled, as defined by the Act, prior to August 17, 2011, the date he attained the age of twenty-two.[3] (AR 27). The ALJ also found

---

[3] To be eligible for CIB, Plaintiff must have a disability that began before the age of twenty-two. 42 U.S.C. § 402(d)(1)(B).

that based on the SSI application, Plaintiff has not been under a disability, as defined by the Act, since November 29, 2013, the application date. (AR 27).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

In an adult function report dated March 5, 2014, Plaintiff alleged that he is unable to work due to stress, poor concentration and memory, and an inability to follow instructions, complete tasks and get along with others. (AR 233). He has trouble sleeping and wakes up screaming due to his anxiety. (AR 234). He needs reminders, including notes and alarms, to remember to take his medications and to show up for his medical appointments. (AR 235, 237). He has difficulty handling stress and changes in routine. (AR 239).

Plaintiff spends his days watching television to relax. (AR 234). He cares for his two sons with the help of his mother and girlfriend. (AR 234). He is able to prepare his own meals, but has trouble following the directions on frozen dinners and prepared foods. (AR 235, 238). He is able to perform household chores, but needs to be reminded until he completes them. (AR 235). Plaintiff does not do any yard work because he is "scared" to work with tools. (AR 236). Plaintiff is able to drive by himself and shop in stores but seldom goes outside because he is "scared" of the outside world. (AR 236). He does not socialize very much and has trouble getting along with friends, family, and authority figures due to his impairments. (AR 237-39).

Plaintiff testified that he is unable to work because he gets nervous and hyper, has trouble getting along with others, and cannot follow instructions due to his anxiety and ADHD. (AR 41-42, 45). Even though he tries to blend in, "everyone looks at me because I'm different." (AR 41). He was fired from his last job as a warehouse worker because he could not follow instructions and had trouble getting along with coworkers. (AR 40-41).

Plaintiff was unable to remember his address or the age of his youngest son. (AR 37-38). When his girlfriend is at work, his two children are taken care of by his mother or his girlfriend's parents. (AR 39). He was driven to the hearing by his mother and either his girlfriend or his mother drive him to medical appointments. (AR 39). Plaintiff has a driver's license but does not drive very much or for more than five minutes because he gets "really nervous." (AR 40). He spends his days watching television but has some trouble understanding what is going on. (AR 46-47).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original)

(citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained

failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's

interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," and the ALJ did not make a finding of malingering. (AR 24). Nevertheless, the ALJ concluded that Plaintiff's statements were "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 24). However, the ALJ must take into account the claimant's subjective symptoms <u>before</u> determining the RFC. Laborin v. Berryhill, 867 F.3d 1151, 1154 (9th Cir. 2017). "To determine the RFC <u>first</u> and <u>then</u> assess the claimant's testimony is to put the cart before the horse." Revels v. Berryhill, 874 F.3d 648, 666 (9th Cir. 2017) (emphasis in original) (citation and alterations omitted); see Laborin, 867 F.3d at 1154 ("Because the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC."). While this approach may not be reversible error, when combined with the ALJ's failure to provide clear and convincing reasoning for rejecting Plaintiff's subjective symptoms, the Court concludes that the ALJ's failure to credit Plaintiff's testimony was error. See Revels, 874 F.3d at 666. As discussed below, the ALJ did not consider Plaintiff's subjective statements in light of his mental impairments.

The ALJ found that Plaintiff "attempted to minimize his daily activities." (AR 23). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Id. "Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." Revels, 874 F.3d at 667 (citation and alterations omitted); see Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability.") (citation and alterations omitted). Indeed, a claimant "does not need to be utterly incapacitated in order to be disabled." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (citation omitted).

Here, the ALJ contends Plaintiff's allegations that he was "unable to be his children's primary caregiver, did not go out often, and rarely interacted with others," were inconsistent with his prior statements and his admissions to the consultative examiner. (AR 23, 24). To the contrary, Plaintiff consistently stated that he cannot take care of his children alone and avoids going outside and interacting with others. He is able to care for

his older child only while they are both on the couch watching television. (AR 39). Otherwise, he relies on his mother, his girlfriend, and his girlfriend's parents to care for his children. (AR 39, 234). While he acknowledged going outside alone occasionally, he emphasized that he does so only when absolutely necessity because he is "scared of the outside world." (AR 236, 392). Plaintiff does not socialize very much and has difficulty getting along with friends, family, coworkers, and authority figures. (AR 40-41). He reported to the consultative examiner that he "does not like being around people and becomes nervous and anxious." (AR 391).

The ALJ also relied improperly on Plaintiff's statements that he is "able to drive himself to appointments or run errands" and has "no trouble with personal care, [is] able to prepare simple meals, and do some household chores." (AR 23). However, "[t]hat [Plaintiff] could participate in some daily activities does not contradict the evidence of otherwise severe problems that [he] encountered in [his] daily life during the relevant period." Diedrich v. Berryhill, 874 F.3d 634, 643 (9th Cir. 2017). Further, the ALJ did not explain how Plaintiff's daily activities are transferable to a work setting. "House chores, cooking simple meals, self-grooming, paying bills, [and] writing checks, . . . as well as occasional shopping outside the home, are not similar to typical work responsibilities." Diedrich, 874 F.3d at 643. Moreover, "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific

13

finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair, 885 F.2d at 603 (emphasis in original). Nevertheless, the ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn, 495 F.3d at 639 (citation and alteration omitted). Here, the ALJ neither made specific findings nor pointed to any record evidence to support her conclusion that Plaintiff's daily activities are "transferable" to a work setting. See id. Plaintiff's uncontradicted evidence of numerous unsuccessful work attempts may suggest otherwise.

The ALJ concluded that Plaintiff's "degree of self-asserted limitations was not supported by the objective medical evidence" and opined that Plaintiff was therefore "exaggerate[ing] the severity of his symptoms." (AR 23). While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

The ALJ emphasized that mental status examinations by Plaintiff's primary care physician invariably found that Plaintiff

was fully oriented with appropriate mood and affect. (AR 24-25; see id. 331, 334-35, 348, 356, 361, 364, 368, 374, 402, 413, 416, 422, 437, 482, 487, 497-98). However, these mental status examinations were a small, perfunctory part of a general physical examination by a doctor who was not a mental health specialist. These examinations did not evaluate other aspects of Plaintiff's mental health, including thought content, thought process, perception, cognition, insight, attitude, behavior, speech, or judgment. Despite these "normal" examinations, Plaintiff's primary care physician diagnosed attention deficit disorder ("ADD"), ADHD, panic disorder, and adjustment disorder with anxiety and depression, and referred him for a psychiatric evaluation. (AR 344, 348, 443). Further, the consultative examiners found on examination that Plaintiff had low average mental functioning, pressured speech, labile and irritable affect, anxious and dysphoric mood, impaired attention and concentration, limited fund of knowledge, and fair judgment. (AR 298-99, 392-93). While Plaintiff occasionally presented to his treating psychiatrist with minimal symptoms, on other occasions he had impaired judgment, irritable or anxious mood, tense posture, accelerated activity, and constricted affect. (AR 426, 453, 498). In September 2015, Plaintiff's treating psychiatrist diagnosed major depressive disorder and ADHD and assigned a Global Assessment of Functioning ("GAF") score of 50.[4] (AR 425). The Ninth Circuit has repeatedly

---

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric

cautioned ALJs that "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." Garrison, 759 F.3d at 1017; accord Diedrich, 874 F.3d at 642. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017; see Diedrich, 874 F.3d at 642 ("[T]he fact that Diedrich was not exhibiting certain symptoms at the time of her appointment on a particular day does not indicate that Diedrich was not experiencing those symptoms generally or at other pertinent times.").

The ALJ failed to properly consider Plaintiff's GAF scores, giving them "limited evidentiary value." (AR 25). Plaintiff was assigned various GAF scores, ranging from 50 to 61.[5] (AR 300, 393, 425, 497). "Although GAF scores, standing alone, do not control

---

Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM-IV). According to DSM-IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. 34.

[5] A GAF score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV 34. A GAF score between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within household), but generally functioning well, has some meaningful interpersonal relationships. Id.

16

determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison, 759 F.3d at 1003 n.4. Thus, while GAF scores are not dispositive, they are nonetheless relevant and must be properly considered. Graham v. Astrue, 385 F. App'x 704, 706 (9th Cir. 2010).

Finally, the ALJ failed to consider Plaintiff's many attempts to work. Plaintiff reported losing fifteen jobs prior to January 2013 due to his poorly controlled ADHD. (AR 346; see id. 213). "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, failed, that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment." Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007) (emphasis in original). Thus, "evidence that a claimant tried to work and failed actually support[s] his allegations of disabling pain." Id. (emphasis in original).

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms. The matter is remanded for further proceedings.[6] On remand, the ALJ shall reevaluate

---

[6] Plaintiff also argues that in assessing his RFC, the ALJ failed to fully account for the limitations opined by Drs. Cash and Unwalla. (Dkt. No. 20 at 16-17). However, it is unnecessary to reach Plaintiff's arguments on this ground, as the matter is

17

Plaintiff's symptoms in accordance with SSR 16-3p, taking into account the full range of medical evidence. The ALJ shall also fully develop the record to insure that all of Plaintiff's psychiatric records are included. Finally, the ALJ shall obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's mental impairments and how Plaintiff's mental limitations affect his ability to work. See 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); SSR 96-6p, at *4.

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 6, 2018

                                                    /S/
                                      SUZANNE H. SEGAL
                                      UNITED STATES MAGISTRATE JUDGE

---

remanded for the alternative reasons discussed at length in this Order.

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**